Mack *v.* Reading Company, Appellant.

Argued March 19, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Richard P. Brown, Jr.*, with him *Henry R. Heebner* and *Morgan, Lewis & Bockius*, for appellant.

*Lynn L. Detweiler*, for appellee.

OPINION BY HIRT, J., July 14, 1953:

Defendant's railroad tracks in the vicinity of Parkland, Pennsylvania, run parallel with U. S. Route 1, on an embankment about 50 feet west of the highway. After dark in the evening of October 21, 1948, plaintiff's tractor-trailer was being driven southwardly on the highway as a freight train on the nearby track was proceeding northwardly. Suddenly and without warning plaintiff's driver observed a dark object, about 30 feet away, rolling diagonally across the pavement directly in the path of the truck. He applied his brakes and swerved the truck but was unable to avoid the oncoming object. On inspection after the collision the driver found that he had run over a coupler which had broken off from a railroad car. The freight train stopped and a separation of about one car length resulted from the loss of the coupler from one of the cars. The steel coupler which was removed from under the truck by the train crew, weighed upwards of 300 pounds and was about 3 feet long. In this action to recover the cost of repairing extensive damage to the truck, the jury found for the plaintiff. Defendant has appealed from the refusal of the court to enter judgment n.o.v. in its favor.

On the trial of the case plaintiff in its proofs did not attempt to charge the defendant with specific acts of negligence but relied upon the doctrine of 'exclusive

control' of the instrumentality which caused the injury, as evidence of negligence, without more. The lower court submitted the case on that theory and charged the jury in accordance with the rule of *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, 504, 32 A. 44, to this effect: "When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care"; and further that the circumstances imposed the duty on the defendant to establish freedom from fault. Appellant contends that the doctrine of exclusive control was not applicable and that in any view the lower court erred in submitting the question of actionable negligence to the jury since defendant's evidence of due care was uncontradicted.

The averment of plaintiff's complaint that the "freight train was under the exclusive control of the defendant" was not denied in defendant's answer and when read into the record became an admission to that effect. *Lacaria, Admr. v. Hetzel,* 373 Pa. 309, 96 A. 2d 132. Moreover the particular car on the train from which the coupler was broken was within defendant's exclusive control. The doctrine of exclusive control was properly invoked in this case and the controlling consideration here is whether, under all of the circumstances, including defendant's unrebutted testimony, the question of defendant's negligence was one of fact for the jury. The freight train parted because of the breaking of a coupler on a hopper car owned by the Pennsylvania Railroad, which, shortly before, had been turned over to the defendant on car interchange. There is testimony that in accordance with routine practice, the car, after defendant received it, was given a "Class A" inspection which consists in no more than "a visual in-

spection of all exposed parts of the car, including both couplers". The testimony of defendant's inspector is that in making such inspection he found "no visible defect in the car or couplers". The conductor, in charge, testified that the train was made up of 92 cars loaded with coal, and the one with the broken coupler was 47 cars from the engine; that the part of the broken coupler remaining in place on the car after the break, by presence of rust on its upper surface indicated an old fracture in the coupler. Another car inspector testified that he examined the car after the event and that the surface of the broken coupler indicated "a 55% old break or fracture" and that the break had occurred about 14 inches back from the end sill at a point which was not visible from the outside of the car. An inspector general testified that cars which are received on interchange are given the same Class A inspection, without discrimination, as cars owned by the defendant; but that such inspection involves more than observing what can be seen in "walking around a freight car . . . you have to get down and look up underneath to see what you can see from the bottom and then over the top of the sill, if it is open".

Appellant strongly relies upon *Bradley v. L. S. & M. S. Rwy. Co.*, 238 Pa. 315, 86 A. 200, an action for personal injuries in which a judgment based upon binding instructions for the defendant was affirmed. In that case the plaintiff went to the railway station and, while waiting for an evening train which he intended to take, sat on a truck on the station platform. He was injured when struck by an iron brake bar which broke away, and was hurled violently, from a car on a passing train. The brake bar had been held in place by a cotter pin which "the jolting or vibration" of the car had dislodged. The car had been inspected in the afternoon of the day of the injury when the brake bar involved was found to be in place and in order, although a brake bar

on another car was missing. A verdict for defendant was directed on the ground that the evidence did not warrant a finding charging the railroad with negligence and the Supreme Court affirmed the judgment on the view that the evidence did not disclose more than "an accident pure and simple" which did not impose liability on the railroad.

The *Bradley* case has not been followed in a similar factual situation and cannot be regarded as authoritative in the disposition of the present appeal. In the course of the opinion in that case the Supreme Court said : "That the bar should have fallen down, broken off, and been hurled from the train just at the spot where the plaintiff was sitting was of course a result which the defendant could not have foreseen". The brake bar was of considerable size and weight and from 2 to 3 feet in length. Under the present-day rule (Cf. *Dahlstrom v. Shrum,* 368 Pa. 423, 84 A. 2d 289) from a realistic viewpoint it must have been reasonably foreseeable in the instant case that a coupler when broken would be thrown clear of the train and, rolling down the embankment on to U. S. Route 1, might damage a motor vehicle, the property of some one of the class to which plaintiff belongs, lawfully proceeding on that much-traveled highway. Moreover the *Bradley* case, in which the doctrine of exclusive control was not applied, is not consistent with the more recent decisions of our Supreme Court to the effect that in similar factual situations the question of the defendant's negligence is for the jury. Here the proof as to the cause of the accident was peculiarly and exclusively within the possession of the defendant (Cf. *Miller v. Hickey,* 368 Pa. 317, 81 A. 2d 910) and the doctrine of exclusive control was applicable. Moreover, from the fact that defendant's testimony of the exercise of due care is uncontradicted, it does not follow that the defendant is entitled to judgment n.o.v. It still remained "for the jury to decide whether such explana-

tions satisfactorily exculpated [the defendant] . . . from the charge of negligence . . .": *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451.

There was not entire unanimity in the defendant's testimony as to the extent of the inspection which the railroad was bound to make and defendant's general inspector testified that "there is a great deal of difference between the care used by one inspector and that used by another". Since the evidence advanced by defendant, that it exercised due care, was all oral, the credibility of the witnesses, the weight of their testimony, and the adequacy of their explanation to meet the inference of negligence were questions of fact for the jury. *MacDonald, Admrx. v. P. R. R. Co.*, 348 Pa. 558, 36 A. 2d 492. Defendant's exculpatory testimony did not establish as a matter of law that the damage was not due to its negligence. As was said in *Hershey v. Pittsburgh & W. Va. Rwy. Co.*, 366 Pa. 158, 161, 76 A. 2d 379: "That, of course, presupposes that the defendant's exculpatory evidence is credible and will, perforce, be so accepted by the jury. But, of course, no such assumption is permissible. The defendant's proofs in material regard being oral, binding instructions in its favor on the basis thereof could not be given: Nanty-Glo Boro. v. American Surety Co., 309 Pa. 236, 238, 163 A. 523; Satterwhite v. National Powder Company, 362 Pa. 133, 139, 66 A. 2d 278; MacDonald v. Pennsylvania Railroad Co., 348 Pa. 558, 562-563, 36 A. 2d 492". In *Commonwealth v. Montour Transport Co.*, 365 Pa. 72, 73 A. 2d 659, the action was for damages to a state highway by the burning of a tractor-trailer cargo of gasoline owned by the defendant. The doctrine of exclusive control was held to be applicable and judgment entered for the defendant on preliminary objection was reversed on this ground: "The facts pleaded by the plaintiff, when proven, will afford an inference of negligence that will carry the case to the jury; and the duty will then be upon the

defendant to exculpate itself by *acceptable* explanation that the accident occurred through no fault of its own". (Emphasis added).

The holding of *Ambrose v. Western Maryland Rwy. Co.*, 368 Pa. 1, 81 A. 2d 895, is not inconsistent with the above conclusions. In that case the court entered judgment for the defendant notwithstanding a verdict for the plaintiff. The defendant railroad delivered a car which it had received from another carrier to the Ordnance Depot in Franklin County. Both doors of the car were sealed when defendant received the car and when it delivered it. Plaintiff's decedent, an employe of the Ordnance Depot, in the line of duty was directed to open the car to unload it. He broke the seal on one of the doors and as he was attempting to open it, the door fell out of the car and onto him, causing the injuries from which he died. In that case it was said that "a railroad company before delivering a loaded car received from a connecting carrier to a consignee must make an inspection thereof sufficiently thorough to ascertain whether there is any *fairly obvious defect* in its construction or state of repair which constitutes a likely source of danger". The character of the inspection in that case however was not for the jury though based on oral testimony because it was obvious that the defect which caused the injury was not ascertainable by reasonable inspection under the circumstances. The defendant's obligation was to deliver the car to the consignee with the seals unbroken, and the duty of inspection does not involve testing sealed doors of a car for defects of operation. In reality the thing that caused the injury was not within the exclusive control of the defendant railroad in the *Ambrose* case.

The issues in the present case were of fact for the jury. There was no objection to the manner of their submission.

Judgment affirmed.