Mack *v.* Reading Company, Appellant.

Argued January 5, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Richard P. Brown, Jr.,* with him *Henry R. Heebner* and *Morgan, Lewis & Bockius,* for appellant.

*Lynn L. Detweiler,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 22, 1954:

The facts of this accident constitute such a typical situation for the application of the rule of evidence commonly known as the doctrine of "exclusive control" that the case might well serve as a classical example of the need and use of that doctrine for the ascertainment of liability.

One Everly was operating a tractor-trailer in the nighttime along U. S. Route 1 near Parkland, Pennsylvania, when a freight train passed in the opposite direction along a track of the Reading Company, this track being located at that point on an embankment about 10 or 15 feet above the highway and parallel to it at a distance of some 50 feet. Suddenly a dark object came diagonally across the road directly in the path of his truck so that he was unable to avoid col-

liding with it. The object in question turned out to be a metal coupler of the type used to hold railroad cars together, weighing upwards of 300 pounds and about 3 feet long; it had broken off from one of the cars and had rolled down the embankment and onto the highway. The owners of the truck, Everly's employers, brought suit to recover the cost of repairing the damage to their vehicle. Having produced their evidence as to the circumstances of the accident they relied on the "exclusive control" doctrine to take their case to the jury. The trial judge having denied defendant's motion for a nonsuit, defendant offered evidence to the effect that the breaking of the coupler had occurred on a hopper car owned by the Pennsylvania Railroad which, shortly before, had been turned over to the defendant on car interchange; that the car had then been given a visual inspection of all exposed parts, including both couplers, which revealed, however, no visible defect; that rust on the surface of the part of the coupler remaining in place on the car after the break indicated an old fracture; and that the break had occurred about 14 inches back from the end sill at a point not visible from the outside of the car. The court refused defendant's point for binding instructions and the jury found a verdict for plaintiff, the judgment entered on which was affirmed on appeal to the Superior Court (173 Pa. Superior Ct. 296, 98 A. 2d 399). From that affirmance the present appeal was allowed.

The object of all rules of evidence is to ascertain the facts. A trial is not a game. Its purpose is to elicit the truth, and to that end those who best know the facts, and especially those who alone know the facts, are the ones who should be called upon to reveal them. Accordingly, as early as almost a century ago, Chief Justice ERLE, in the Court of Exchequer, in Scott v.

*The London and St. Katherine Docks Company*, 3 Hurlstone & Coltman 596, enunciated the rule of "exclusive control" in the exact language which we have since quoted and followed in a multitude of cases in our own reports, namely, that ". . . where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." We have applied this doctrine only in cases where the evidence as to the cause of the accident was peculiarly or exclusively within the possession of the defendant and not equally available to both parties.

In actions to recover for damages caused by negligence the burden is upon the plaintiff to furnish proof of such negligence, but it is not necessary, or indeed possible, in all cases to establish such proof by positive testimony, and what the rule of "exclusive control" does in situations where it is applicable is to shift to the defendant the burden of coming forward with the evidence. It was said in *Janock v. Baltimore & Ohio R. R. Co.*, 252 Pa. 199, 200, 201, 97 A. 205, 206: "There are many instances where the burden resting on plaintiff may be met by proof of circumstances from which the jury are permitted to infer negligence on the part of defendant . . . . To require plaintiff to prove affirmatively the exact source of the accident would usually in cases of this kind defeat recovery, however gross the negligence, as the person injured seldom has means of either knowing or discovering absolutely the defect in equipment or delinquency on the part of employees, both of which are entirely within the control of the defendant." The doctrine of "exclusive control" is designed to meet situations of that kind. It is not

that negligence is presumed in such cases from the mere happening of the accident but that the circumstances amount to evidence from which it may be inferred by the jury: *Zahniser v. Pennsylvania Torpedo Co., Ltd.,* 190 Pa. 350, 353, 42 A. 707, 708; *Lesick v. Proctor,* 300 Pa. 347, 350, 150 A. 618, 619; *Knox v. Simmerman,* 301 Pa. 1, 4, 151 A. 678; *Pope v. Reading Co.,* 304 Pa. 326, 330, 156 A. 106, 108. As expressed in *Wright v. Straessley,* 321 Pa. 1, 5, 182 A. 682, 684, "There is a class of cases in which accidents are attended by circumstances from which the inference of negligence is legitimate. But in such cases negligence is not presumption of law. It is a finding of fact, and before the fact can be found a jury must consider the circumstances, reason on them and draw the inference of negligence." Similar explanations of the nature, purpose and justification of the rule are to be found in such cases, for example, as *Skeen v. Stanley Co. of America,* 362 Pa. 174, 178, 179, 66 A. 2d 774, 776; *Commonwealth v. Montour Transport Company,* 365 Pa. 72, 73, 74, 73 A. 2d 659, 660; *Tamres v. Reed,* 109 Pa. Superior Ct. 28, 32, 165 A. 538, 539; *Dillon v. William S. Scull Co.,* 164 Pa. Superior Ct. 365, 368, 369, 64 A. 2d 525, 527.

As previously stated, all the elements required for the application of the doctrine of "exclusive control" exist in the present case. Both the equipment and the operation of the train were in the exclusive possession, control and management of the defendant and the accident was such as in the ordinary course of human experience would not have happened had proper care been exercised to prevent it. It certainly was quite extraordinary for a portion of a train's mechanism of the size and weight of this coupler to become detached and be thrown off from the train in motion, and while, of course, no one could have foreseen the exact

manner in which the resulting accident occurred, namely that the coupler would roll down an embankment and onto a highway immediately in front of a passing truck, it is not necessary for the imposition of liability for negligence that the particular details of the happening of the event caused by such negligence should have been anticipated.

Defendant contends that plaintiff failed to introduce evidence to show that the accident was one which would not ordinarily happen if due care had been used, —in other words, show that couplings do not ordinarily break in the absence of negligence in the method and frequency of inspections. Such a requirement, however, would amount to a complete negation of the very rule of "exclusive control" since it would practically necessitate proof of negligence by positive testimony instead of permitting its inference from the circumstances attending the accident. In all the cases applying the rule the court itself determined, as a matter of common knowledge, that the nature of the occurrence was so unusual that, when it did occur, an inference would reasonably arise that it resulted from failure to exercise proper care.

The case of *Ambrose v. Western Maryland Rwy. Co.*, 368 Pa. 1, 81 A. 2d 895, upon which defendant largely relies, is not in point because there the defendant was not in exclusive control of the instrumentality causing the injury. As far as the decision in *Bradley v. Lake Shore and Michigan Southern Rwy. Co.*, 238 Pa. 315, 86 A. 200, is concerned, it is sufficient to say that it is so obviously inconsistent with all of our many other cases applying the rule of "exclusive control," that, as the Superior Court properly pointed out, it cannot be presently accepted as authority.

Defendant contends that since it produced evidence to prove that it had not in fact been guilty of any neg-

ligence but had made all reasonable inspections of the car and couplers the court should have granted its motion for binding instructions. But probably no case in our reports has been more frequently cited than *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523, which held that however clear and indisputable may be the proof, when it depends upon oral even though uncontradicted testimony the credibility of the witnesses is nevertheless for the jury and it is the province solely of that tribunal to decide the issue. In the present case the jury may not have believed the testimony offered by defendant's witnesses as to whether the inspection claimed had in fact been made, or, if made, whether with sufficient thoroughness, or whether the break in the coupler was at a point so far back from the end sill of the car that it would not have been possible to have seen it by proper examination. Be that as it may, the court obviously could not have declared as a matter of law that defendant's evidence had to be believed and that defendant was therefore freed from the charge of negligence. If, in the opinion of the court, the verdict of a jury indicates a capricious disregard of persuasive testimony, the judicial remedy is a setting aside of the verdict and the granting of a new trial: *McDonald, Admrx., v. Pennsylvania R. R. Co.*, 348 Pa. 558, 567, 36 A. 2d 492, 497.

The order of the Superior Court affirming the judgment in favor of plaintiff is affirmed.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

The case of *Bradley v. L. S. & M. S. Rwy. Co.*, 238 Pa. 315, referred to in the Majority Opinion, was decided in 1913, and for many decades lay across the

track of remedial justice like a steel and concrete barrier. No one can estimate the number of lawsuits that were either dismissed or never even begun because of the apparently insurmountable obstacle built up by that decision. The facts in the *Bradley* case were simple. While waiting at the station of the defendant railroad company in Polk, Pennsylvania for a railroad train bound for Franklin, Pennsylvania, George Bradley, Jr., was violently struck and badly injured by a brake bar (measuring from 2 to 3 feet in length) which broke loose from a passing freight train.

If the doctrine of exclusive control, which came into existence, as the Majority Opinion well points out, a century ago, could ever have proper application, it should have applied in that case. This Court, however, speaking through Justice POTTER said that the plaintiff was not entitled to recover because he was the victim of an "accident pure and simple." What is any negligence case but the result of an accident pure and simple? Unless wantonness is involved, it is assumed that the basis of all negligence cases is fortuitous circumstance or accident. Nonetheless, this sophistical argument was sustained by the highest court of the Commonwealth and was accepted as precedent for decades.

It was becoming apparent in recent years that the Bradley barrier could not hold up much longer before the driving force of modern decisions with their realistic application of the exclusive control doctrine to present day conditions, as well as to improved transportational facilities and methods for detecting mechanical disrepair. It had in fact become obvious that the *Bradley* case, doing service for 40 years, was due for formal retirement without pension, but no decision bravely came forward and said so. And, as a consequence, the bar of the Commonwealth could only as-

sume that accidents such as the one involved in the present case were still to be regarded as accidents "pure and simple". Indeed, counsel for the railroad company asked in the instant appeal that this Court "reaffirm the fair and reasonable rule set forth in the *Bradley*" case. No lawyer can be criticized for assuming that the standard for fairness and reasonableness is what the Supreme Court says is fair and reasonable.

It is, therefore, a matter for infinite gratification that the Pennsylvania Superior Court boldly confronted the *Bradley* case, sagaciously analyzed it and courageously declared it to be contrary to the law of the day. And it is a matter for double gratification that this Court has now officially overruled and repudiated the *Bradley* decision so that the Bar, as well as the people, may definitively know that it is no longer the law of this honored Commonwealth.